F I L E D
Clerk
District Court

DEC 16 2021

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **PEACE AND ORDER TRADING CORPORATION,** | **Case No. 1:20-CV-00034** |
| **Plaintiff,** | **DECISION AND ORDER** |
| **vs.** | **(1) GRANTING PLAINTIFF'S MOTION TO APPOINT LIMITED RECEIVER, AND** |
| **FAIRYLAND INVESTMENT, LLC,** | **(2) SETTING TERMS OF RECEIVERSHIP** |
| **Defendant.** | |

On September 9, 2021, Plaintiff Peace and Order Trading Corporation ("Peace and Order") filed its Second Motion for Appointment of Receiver, seeking the Court's appointment of Ronnie D. Hodges ("Hodges") as limited receiver to auction Fairyland's leasehold interest for Lot 019 D 61 and Lot 019 D 83 located in Navy Hill, Saipan. (ECF Nos. 31, 32.) Defendant did not file a response. This matter came before the Court on September 29, 2021 for a hearing. (Min., ECF No. 36.) Defendant Fairyland Investment, LLC ("Fairyland") was not present. (*Id*.) Based on Fairyland's non-opposition, Peace and Order's briefs and supporting documents, Hodges' testimony, as well as the applicable law, the Court GRANTED Peace and Order's second motion for a receiver and appointed Hodges as limited receiver. (Min., ECF No. 36.) The Court now memorializes its reasons in writing and sets forth the terms of the limited receivership.

## I.  BACKGROUND

In 2018, Fairyland hired Peace and Order to provide renovation and construction work at Fairyland's apartment building complex in Navy Hill, Saipan, located on Lot 019 D 61 and Lot 019 D 83. (Compl. ¶¶ 12-14, ECF No. 1.) As a result of Fairyland's continuous failures to pay Peace and Order for its performance under their written contract, Peace and Order stopped its

- 1 -

work. On December 7, 2020, Peace and Order filed a complaint with this Court, asserting two causes of action, breach of contract and unjust enrichment (Compl., ECF No. 1.) On January 15, 2021, Peace and Order caused to be served the Complaint and Summons to Fairyland's registered agent, Gloria DLG. Sablan. (*See* Decl. of Service, ECF No. 4.) Despite being served, Fairyland failed to answer or otherwise appear, and the Clerk thereafter entered default against Fairyland upon Peace and Order's motion. (Mot. for Default, ECF No. 15; Entry of Default, ECF No. 18.) On April 12, 2021, this Court held a default judgment hearing and thereafter directed the entry of default judgment, which was issued in favor of Peace and Order and against Fairyland in the principal amount of $767,697.50, plus attorney's fees and costs, plus the applicable federal interest rate for post-judgment interest on the date of the order. (Min., ECF No. 23; Order, ECF No. 24; J., ECF No. 25.) Peace and Order subsequently moved for an appointment of a receiver (ECF No. 27), but the Court denied that initial motion for failure to serve Defendant Fairyland of the motion as required by this Court's Local Rule 63.1(a)(2) (Min., ECF No. 30; Mem. Decision, ECF No. 34).

On September 9, 2021, Peace and Order filed a Second Motion for Appointment of Receiver. (ECF No. 31.) A proof of service showing the service of the Motion to Fairyland's registered agent, Gloria DLG. Sablan, was filed on September 29, 2021. (ECF No. 35.) A hearing on the matter was held on September 29, 2021 where Ronnie D. Hodges ("Hodges") as the proposed individual receiver appeared at the hearing. (Min., ECF No. 36.) Hodges was sworn and Peace and Order's counsel, along with the Court, queried Hodges as to his qualifications and the proposed method in which he would sell Defendant's interest in the apartment complex. Fairyland did not appear at the hearing and failed to oppose Peace and Order's proposal. The Court

thereafter granted Peace and Order's second motion for a receiver and appointed Ronnie D. Hodges to act as a receiver in the sale of Fairyland's leasehold interests in Lot 019 D 61 and Lot 019 D 83. (*Id.*)

## II. LEGAL STANDARD

"[F]ederal law governs the issue of whether to appoint a receiver in a diversity action." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). Rule 66 of the Federal Rules of Civil Procedure provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Under the Local Rules of this Court, a receiver "may be appointed after notice and hearing upon an order to show cause." L.R. 63.1(a)(2). Upon notice, "[t]he defendant must provide to the temporary receiver [or plaintiff] within seven (7) days after being served with the order a list of defendant's creditors and their addresses." *Id*. At least five days before the hearing regarding receivership, the temporary receiver or plaintiff must mail the creditors the notice of the hearing and file proof of said notice. *Id*. Upon appointment, the Court may require the receiver to furnish a bond "in an amount which the judge deems reasonable." L.R. 63.1(b). Local Rule 63.1 provides other parameters and requirements in the  appointment of a receivership. Requiring courts to adhere to the "normative standard" of historical practice in federal courts ensures uniform appointment of receivers. *LaPeter*, 563 F.3d at 842.

"Under federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." *Id*. at 844 (internal quotation marks omitted). Although "there is no precise formula for determining when a receiver may be appointed," federal courts consider the following factors in making this determination:

(1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id*. The Ninth Circuit has applied other factors including "whether the defendant was of doubtful financial standing" and "whether the property was of insufficient value to insure payment." *Id*. The Court, however, "has broad discretion in appointing a receiver" and "no one factor is dispositive." *Id*. at 845.

## III.  DISCUSSION

Peace and Order claims that the Court should appoint a limited receiver for the following reasons: (1) judgment has already been entered and Peace and Order's probability of success is 100%, and it has a valid claim to the subject property; (2) due to Fairyland's failures, the Property remains unfinished, exposed to the elements, and with no noticeable maintenance or any other activity such that it appears abandoned and diminishing in value; and (3) because of the current local economic conditions due to the COVID-19 pandemic, a local sheriff's sale of the property is unlikely to result in the recovery of the full value of the property as opposed to a receiver. (Mem. at 1-5, ECF No. 32.) Peace and Order further argues that there is evidence of Fairyland's insolvency and Peace and Order is "unable to identify any assurances that legal remedies will be adequate." (*Id*. at 5.) Accordingly, "[a]ppointing a receiver will preserve Peace and Order's ability to collect on the debt owed to it, whereas denying a receiver will prevent Peace and Order from collecting (or make it far more difficult)." (*Id*. at 5.) Based on the Court's application of the

*LaPeter* factors as follows, this Court concludes that the appointment of a receiver to help Peace and Order satisfy its judgment is warranted.

### A. Defendant's Financial Standing

Evidence of a defendant's insolvency in other cases may weigh in favor of appointing a receiver. In *Sterling Savings Bank v. Citadel Development Company, Inc.*, 656 F. Supp. 2d 1248, 1262 (D. Or. 2009), the plaintiff presented evidence that defendants were involved in eight foreclosure suits with the plaintiff, the worth of those suits a combined total of over $16 million. The court concluded that "[t]his evidence supports the inference that, because Defendants are involved in so many foreclosures concurrently, the Defendants are of doubtful financial standing." *Id*. Similarly, in *California Bank and Trust v. Shilo Inn*, 2012 WL 1883474 (D. Idaho May 22, 2012), defendants defaulted in multiple other suits totaling over $11 million. "As in *Sterling*, this evidence supports the inference that, because [the defendant] is involved in numerous foreclosures, [the defendant] is of doubtful financial standing." *Id*. at *5.

Given Fairyland's failure to appear in this action despite given adequate notice, neither Peace and Order nor the Court can fully ascertain Fairyland's financial standing. The only asset that Peace and Order is aware of is the leasehold interest that Fairyland currently owns on Lot 019 D 61 and Lot 019 D 83 located in Navy Hill, Saipan. From the hearing on the mechanic's lien, the Court heard and reviewed evidence of Fairyland's failure to make payments to Peace and Order for their work and materials on the apartment complex on those lots. Given Fairyland's inability or unwillingness to pay and satisfy judgment, this Court finds that Fairyland has doubtful financial standing.  This factor therefore weighs in favor of appointing a receiver.

//

**B. Value of Property to Insure Payment**

The Court must also evaluate whether the property's value, here, Fairyland's leasehold interest and improvement (the Fairyland apartment complex building), is insufficient for the debt it secures. *Sterling*, 656 F. Supp. 2d at 1262. One relevant question is whether the value of the assets exceeds the defendant's indebtedness. *See Compass Bank*, 2017 WL 10378348, at *4. In a similar vein, where the value of property is a comparable amount to the debt owed, courts may be inclined to find this factor met. *Sterling*, 656 F. Supp. 2d at 1262 (finding that property worth $1.05 million for a debt of over $1.9 million sufficiently establishes property value factor).

Based on Mr. Hodge's testimony at the September 29, 2021 hearing and Broker Price Opinion attached as Exhibit B to his declaration, the estimated value of the Fairyland's leasehold interest in the apartment complex is around $875,000.00 and $900,000.00. (See Min., ECF No. 36; Hodges Decl., ECF No. 33.) The total value of Fairyland's interest at approximately $900,000 compared with Fairyland's $767,697.50 debt to Peace and Order sufficiently demonstrates that this factor is met. Peace and Order has met its burden to show that Fairyland's leasehold is of sufficient value to insure payment of Peace and Order's judgment. Accordingly, the Court finds this factor weighs in favor of the appointment of a receiver.

**C. Validity of Claim**

In this case, a judgment has already been entered (J., ECF No. 25), and therefore there is no dispute to the Court that Peace and Order has a valid claim. *See Tryke Mgmt. Servs. LLC v. Linx Card Inc.*, 2020 WL 9258369 (D. Ariz. Feb. 27, 2020) (no dispute); *Shilo Inn*, 2012 WL 1883474, at *5 (same). "Unlike cases in which a receiver is appointed after a judgment on the merits, here the court has not had the benefit of a trial or of hearing all the evidence that bears on

[the plaintiff's] claimed right to foreclose[.]" *Sterling Sav. Bank*, 656 F. Supp. 2d at 1262; *see Portland Marche, LLC v. Fed. Nat'l Mortg. Assoc.*, 2021 WL 2827476, at *3 (D. Or. July 7, 2021) (finding no valid claim where "motion for appointment precedes any judgment on the merits"); *Paradise v. USPLABS, LLC*, 2016 WL 11505594, at *4 (C.D. Cal. Apr. 11, 2016) ("At this very early stage in the litigation, the Court cannot determine that Plaintiffs have a valid claim."). Because Peace and Order has a valid claim through its judgment, this factor weighs in favor of appointing a receiver.

### D. Fraudulent Conduct

Peace and Order has not alleged any fraud or misrepresentation by Fairyland. In fact, Peace and Order has conceded that Fairyland has not committed fraud. (Mem. at 4.) Therefore, this factor weighs against the appointment of a receiver. *See Sterling*, 656 F. Supp. 2d at 1263 (conceding no fraud); *Tryke*, 2020 WL 9258369 at *4 (failing to demonstrate evidence of fraud); *cf. Avalanche Funding, LLC v. Arif*, 2018 WL 1470597, at *2 (E.D. Cal. Mar. 26, 2018) (finding fraud factor neutral, giving no weight where record insufficiently developed to establish fraud).

### E. Danger of Property Dissipation

According to Peace and Order, "the [Fairyland apartment] building remains unfinished, exposed to the elements, and with no noticeable maintenance or any other activity. It appears abandoned and to be diminishing in value." (Mem. at 4.) At the mechanic's lien hearing, Peace and Order's manager, Samson Hsieh, testified that construction on the building was incomplete. *See Arif*, 2018 WL 1470597, at *2 (determining that waste and diminishing property value exists for 3,200 acres of undeveloped vacant rangeland). The building is not currently occupied. Furthermore, it is undisputed that the effects of the COVID-19 pandemic on the CNMI's economy

have negatively impacted the real estate market. Thus, this factor weighs in favor of the appointment of a receiver.

### F. Adequacy of Legal Remedies

Where the party against a receivership is sought "indicates an ability and willingness to pay the past due [payment amounts], and [the party] puts forth evidence that the value of the property exceeds that amount due on the loan," courts have found that this factor weighs against a receivership. *Portland Marche LLC*, 2021 WL 2827476, at *5.

Here, the Court finds that a receivership to auction off the leasehold interest of the Navy Hill properties is the most adequate legal remedy. First, as discussed previously, there does not appear to be any ability or willingness by Fairyland to pay the judgment in this matter. Second, Hodges' testimony reveals that a receiver has the better expertise or means to recover the best value for the real property, including the ability to advertise in the national or international market, and the sale of real property in the Commonwealth requires some specialized expertise. Thus, this factor weighs in favor of appointing a receiver.

### G. Harm of Denial of Receivership Outweighs Injury to Defendant

The pertinent question is whether the party seeking a receiver would suffer harm if a receiver is not appointed. *Cf. Portland Marche, LLC*, 2021 WL 2827476, at *6 ("[P]ossible harms do not support the 'extraordinary' measure of appointing a receiver"). Alternatively, courts have evaluated  whether defendant would suffer significant prejudice. In *Compass Bank v. Baraka Holdings, LLC*, defendants asserted that the sale of certain equipment subject to the receivership would be at a "steep discount" due to the unique customization of the equipment. 2017 WL 10378348, at *6 (C.D. Cal. Oct. 27, 2017). Thus, defendants sought to fulfill payment in other

ways. The court concluded that "[g]iven the extreme prejudice that Defendants will suffer if a receiver is appointed, and the lack of evidence that Plaintiff will suffer prejudice without a receiver, the Court finds this factor weighs against appointment." *Id.*; *cf. Sterling*, 656 F. Supp. 2d at 1264 (failing to submit sufficient evidence to show harm weighs against appointing a receiver).

Here, Fairyland is in doubtful financial standing and other remedies are not adequate given the specialized expertise required for sale of real property. Peace and Order's judgment will remain unsatisfied without a receiver, which demonstrates harm. Furthermore, the Court cannot determine any prejudice to Fairyland, especially where Fairyland failed to oppose the receivership despite being given notice. Thus, appointing a receiver is proper under this factor.

**H. Probability of Success and Possibility of Irreparable Injury**

Plaintiff must show both a probability of success and irreparable injury to establish this factor. *See Sterling*, 656 F. Supp. 2d at 1264 ("Even if the court assumes that [the plaintiff] is likely to prevail, the court record does not demonstrate that [the plaintiff]'s interest in the property would be irreparably injured."); *Portland Marche, LLC*, 2021 WL 2827476, at *6 (same); *see also Weiss v. NNN Capital Fund I, LLC*, 2015 WL 11990930, at *6 (S.D. Cal. May 8, 2015) (failing to show a likelihood of success on the merits weighs against receivership). In *Shilo Inn*, the court determined that failing to  pay property taxes and penalties would decrease the value of the property thereby suggesting the possibility of irreparable injury. 2012 WL 1883474, at *7.

First, the probability of success is a foregone conclusion, given that Peace and Order already has a judgment. Second, Fairyland continuously refused to participate in this lawsuit despite being served several times and in multiple ways (ECF Nos. 3, 7, 8, and 35), and still

refused to satisfy the judgment while the real property continues to languish without proper care and maintenance. This strongly suggests the possibility of irreparable injury. Therefore, this factor weighs in favor of a receivership.

## I. Suitability of Receivership

Where a receiver would be more qualified to manage the assets, this factor weighs in favor of appointing a receiver. *See Shilo Inn*, 2012 WL 1883474, at *7 ("Although [the plaintiff] has not presented direct evidence that a receiver would manage the property better than [the defendant], [the receiver's] qualifications and experience certainly command an inference that it could do better."); *see also Portland Marche, LLC*, 2021 WL 2827476, at *6 (failing to demonstrate that the proposed receiver would be better able to operate and manage the property weighs against a receivership); *Sterling*, 656 F. Supp. 2d at 1264 (same); *Compass Bank*, 2017 WL 10378348, at *6 (same).

Given that the only known asset of Fairyland is real property here, a receiver with expertise in the sale of real property is more qualified in acquiring the best value for the real property. Given Hodges' expertise in the area and the testimony adduced at the hearing, the Court finds that a receivership is the most suitable means for Peace and Order to satisfy its money judgment. Thus, this factor weighs in favor of a receivership.

After considering each of the *LaPeter* factors and weighing them in the aggregate, and considering Fairyland's non-opposition to a receiver, the Court concludes that Peace and Order has shown that appointment of a receiver is necessary and appropriate. In view of the lack of adequate remedies, the Court finds that a receivership is the most suitable means for Peace and

Order to recover on its judgment. Therefore, Peace and Order's motion to appoint a receiver is **GRANTED**.

### IV.  TERMS OF APPOINTMENT FOR LIMITED RECEIVER RONNIE D. HODGES

Judgment in the principle amount of $767,697.50 is owed for unpaid materials and services provided by Peace and Order to Fairyland. (J., ECF No. 25.) For the foregoing reasons, the Court hereby APPOINTS Ronnie D. Hodges ("Hodges" or "Receiver") as the receiver to administer, collect, or sell any real or personal property in which Defendant-Judgment Debtor Fairyland Investment, LLC has an interest, and to do any other acts required to satisfy the judgement herein, including any fees and costs awarded by the Court.  This receivership shall take effect on the execution of this Order. Hodges shall possess all the powers of a federal equity receiver and is vested with the power and authority provided under Federal Rules of Civil Procedure 66 and 69 as well as Local Rule 63.1 to perform all acts deemed necessary to comply with this Order. The Court enumerates a non-exhaustive list of terms and conditions of this limited receivership as follows.

### A.  Powers and Duties

Mr. Hodges shall have all authority, powers, and duties to sell Fairyland Investment, LLC's leasehold interest in Lot 019 D 61 and Lot 019 D 83 ("Fairyland Apartment"). The Receiver is hereby authorized to:

(1) Communicate ex parte with any party;

(2) Enter into Lot 019 D 61 and Lot 019 D 83 to prepare for sale, and inspect the building and building improvements located on the property;

(3) Preserve and protect the value of the Fairyland Apartment, to put Fairyland Apartment into sellable condition, and to arrange the sale of Fairyland Apartment pursuant to the terms of this Order;

(4) Arrange for the advertising, publishing, and communication reasonable for the sale of the Fairyland Apartment, subject to confirmation by the Court, in accordance with the procedures in 28 U.S.C. § 2001 and 2002 and this Order; and

(5) List the Fairyland Apartment in its unfinished and partially improved conditions.

**In addition to the requirements at Local Rule 63.1(f)-(g),** the Receiver shall additionally comply with the following requirements for the sale of Fairyland's assets:

(6) The terms of any purchase agreement shall include the balance of the purchase price to be paid at closing and include an earnest money deposit in an amount to be approved by the Court;

(7) Pursuant to Local Rule 63.1(e), prepare an accounting report at the end of each month for filing with the Court and request for Approval of Sale. The accounting report shall include all proceeds received, costs of sale, and the winning bid documents (which identify the bidder, amount of the winning bid, and list of asset purchased) and confirms receipt of the required deposit to secure the bid, as well as canceled checks;

(8) At closing, the purchaser(s) shall receive documents transferring title to the properties executed by the Receiver;

(9) A closing shall not occur until after the sale has been confirmed by further order of the Court;

(10)   After closing, the Receiver shall file a closing report with the Court detailing total proceeds received, costs of sale that includes the Receiver's commission of 5%, and net proceeds collected for payment of the Judgment.

## B. Terms of the Sale

(1) The Fairyland Apartment auction will be held at the time and location described in public advertisements;

(2) Potential buyers must be registered to attend the sale by emailing saipanhomes@gmail.com;

(3) Potential buyers must submit a One Hundred Thousand US Dollar ($100,000.00 USD) Letter of Credit from a FDIC insured bank to the email above or deposit the same amount with the CNMI escrow company[1] named in the advertisement to attend the sale;

(4) The winning bidder must deposit into the escrow account established for the Sale, One Hundred Thousand US dollars ($100,000.00 USD) (herein referred to as the "Initial Deposit") within 72 hours after the auction, if not done so previously, and that bid will be submitted for the Court's approval;

(5) If the Sale is approved by the Court, the winning bidder will be notified by the Receiver within seven (7) business days of that approval and must submit the balance within ten (10) business days of that notification;

---

[1] Given that the sale is for real property, the Court will allow this escrow company to be used in lieu of a depository designated by the Court pursuant to Local Rule 63.1(e) The Receiver, however, must still comply with Local Rule 63.1(e)'s requirement that the receiver deliver to the clerk a statement of account and the canceled checks at the end of each month.

- 13 -

(6) The Initial Deposit is not refundable for any reason should the winning bidder fail to complete the sale;

(7) If the Court does not approve the sale, any funds escrowed will be refunded less the escrow fees and registered bidders may be notified of a second sale as the Court orders; and

(8) All registered bidders that escrow funds will be required to pay their own escrow fees.

## C. Fairyland's Obligations

To date, Fairyland has failed to appear into this case, but can appear at any time to contest the sale of Fairyland Apartment. If Fairyland does enter into this case, it is ORDERED to cooperate with the Receiver's efforts to comply with all obligations under this Order, including but not limited to:

(1) Providing all pertinent information, including but not limited to, title documents, records, and invoices related to Fairyland Apartment, as requested;

(2) Executing any necessary documents to provide the Receiver with access to or transfer of Fairyland Apartment;

(3) Granting whatever access is requested by the Receiver to effectuate its duties; and

(4) Arranging and funding the security and insurance of Fairyland Apartment in the possession of Fairyland pending the sale.

The Court further ORDERS that Fairyland and its representatives or agents are restrained and enjoined from:

(1) Transferring their interest, ownership, or control of any of its leasehold interests in Lot 019 D 61 and Lot 019 D 83 in which they presently hold an interest, ownership or control;

(2) Making transfers of the improvements and fixtures that are located in the Fairyland Apartment among themselves or any entities owned or controlled by them; or

(3) Interfering in any way with Fairyland Apartment or its sale pursuant to this Order.

**D.  Auction Process**

The Receiver shall market and sell Fairyland Apartment at a public auction as follows:

(1) After the preparation of Fairyland Apartment, Receiver shall use reasonable efforts to market and promote it. Receiver shall also contact potential buyers on Saipan that may be interested in Fairyland Apartment;

(2) The auction shall be held on within 30 to 90 days after this Order, except that no sale shall be made without notice published once a week in the Saipan Tribune or Marianas Variety for at least four weeks prior to the sale;

(3) Fairyland Apartment will have an opening bid not greater than 30% of the fair market value calculated by the Receiver using his professional opinion;

(4) Bids are final, subject to Court approval as described below.

(5) At the conclusion of the auction, the winning bidder shall secure the deposit of $100,000.00 within 72 hours and shall receive from the Receiver a confirmation of the winning bid reflecting the amount of the bid, the property description, the amount of time left on Fairyland's leasehold and confirmed receipt of required deposit; and

(6) After the Court's approval and receipt of full payment, Receiver shall begin processing the land transfer documents to the winning bidder.

### E.  Compensation of Receiver

Mr. Hodges will be paid five percent (5%) of all sales proceeds as and when those proceeds of sale are made, plus reimbursement of the following expenses, subject to Court approval:

(1) reasonable expenses for the advertisement of the auctions; and

(2) any cleaning labor used to improve the overall look of Fairyland Apartment.

Mr. Hodges shall first advance the costs for advertisement of the auctions and any cleaning labor used to improve the overall look of Fairyland Apartment.

### F.  Approval of Sale

When a bid is approved by the Receiver, the Receiver shall notify the Court and provide the information on the bid and request written approval. If the Court approves the bid, the balance due shall be paid immediately by cash to the escrow agent in this entitled case to be deposited into the escrow account, or by electronic fund transfers to the escrow account. The funds held in the escrow account will be held until further order from the Court.

### G.  Duration of Receivership

The Receiver shall serve until the approval and collection is completed from the auction or until the earliest of:

(1) the Receiver requests to be relieved and such request is approved by the Court;

(2) ninety days after the Receiver has submitted a notice of resignation to the Court; or

(3) the Court removes and replaces the Receiver for good cause and after a hearing.

Notwithstanding the above, the Receiver must still comply with Local Rule 63.1(f)'s requirement for reporting and petitioning for instructions within 28 days of this Order, including any recommendation as to the continuance of the receivership and reason for the recommendations.

### H.  Other Creditors and Distribution of Proceeds

Pursuant to Local Rule 63.1(a)(2), Fairyland was to provide to the Peace and Order a list of creditors within seven (7) days after being served with the Motion for a receiver. Peace and Order has not received any list of creditors and has not been contacted by Fairyland or any of its representatives before or after the hearing for the Motion. At this time, there are no known creditors of Fairyland.  Any excess of proceeds from the sale after compensating Peace and Order for its judgment, interests, attorney's fees and costs and compensating the Receiver shall be distributed back to Fairyland.

### I.  Continuing Jurisdiction

The Court retains specific and continuing jurisdiction to enforce the provisions of this Order, and to enter such further orders to effectuate the purposes of this federal equity receivership.

The Court additionally retains jurisdiction to enable any party, subject to this Order, to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe the Order, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

IT IS SO ORDERED this 16th day of December, 2021.

RAMONA V. MANGLONA
Chief Judge

- 17 -